IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BEST LIFE AND HEALTH INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 04-0353-CV-W-HFS |
| BONNIE MURRY, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

On April 20, 2004, plaintiff BEST LIFE and Health Insurance Company filed this interpleader action against defendant Bonnie Murry and defendants Kristen Becker and Bradley S. Becker, to determine the beneficiary of life insurance and accidental death insurance benefits payable upon the death of Donald S. Becker, a participant in an ERISA employee benefit plan. BEST LIFE has paid the insurance proceeds into the court's registry, and has been dismissed from the case with prejudice. Bonnie Murry and the Beckers have advanced competing claims to the proceeds. The Beckers have filed a motion for summary judgment. For the reasons set forth below, the Beckers' motion for summary judgment will be denied.

## I. Summary Judgment Standards

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467 (1962). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving

party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and it must give that party the benefit of all reasonable inferences to be drawn from the evidence. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999).

**II. Background**

This interpleader action involves the competing claims of defendants to life insurance and accidental death insurance proceeds. Donald S. Becker was an employee of Ryco Packaging Corporation, which offered him certain benefits through one or more employee benefit plans governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Donald was a participant in Ryco's 401(k) profit sharing plan. On December 7, 1994, he executed a "Beneficiary Designation Election Form" for the Ryco Packaging Corporation of Kansas 401(k) Profit Sharing Plan, revoking and replacing any prior beneficiary designations and naming Bradley Becker and Kristen Becker (his adult children) as beneficiaries. The beneficiaries would "receive any death benefits payable as a result of my participation in the pension plan named above." Beckers' Ex. 4. A document provided to Donald and other Ryco employees indicated that life insurance benefits were available through their 401(k) plans. Specifically, an undated letter to 401(k) participants from the plan's trustee contains the following statement below the signature block: "If you would like information on buying life insurance through your 401(k) Plan, please return the enclosed card." Beckers' Ex. 3.

In late 1993 or early 1994, Bonnie Murry began a romantic relationship with Donald. In 1995, Donald divorced from his wife, Kay Becker. In the summer of 1995 or 1996, Bonnie moved

in with Donald at his residence in Blue Springs. On August 13, 1996, Donald executed an "Enrollment Card" from Mid-American Benefits, Inc., revoking any other beneficiary designations and naming Bonnie Murry as beneficiary. Beckers' Ex. 6. The form references "the group plan" and appears to relate to insurance. Below the signature line, next to the heading "Types of Coverage," there were check boxes for Life, AD&D, Dep. Life, Medical, Dental, Vision, STD, LTD, and PCS; none of the boxes were checked.

In late 1996 or early 1997, Bonnie moved out of Donald's residence. At that time, Bonnie changed the beneficiary of her life insurance policy from Donald to her adult children. On August 12, 1998, Donald executed a "Beneficiary Designation Election Form" for the Ryco Packaging Corporation of Kansas 401(k) Profit Sharing Plan, revoking and replacing any prior beneficiary designations and naming Bradley Becker and Kristen Becker as beneficiaries.[1] The beneficiaries would "receive any death benefits payable as a result of my participation in the pension plan named above." Beckers' Ex. 7.

On April 24, 2001, Donald executed his Last Will and Testament naming Kristen and Bradley as the sole heirs of his estate, and naming Kristen as the estate's executor. Beckers' Ex. 8. According to Kristen, Donald also called and told her that his estate was in order and that he was leaving everything to her and her brother Bradley.

On November 21, 2003, Donald was found dead in his home. Beckers' Ex. 9. At the time of his death, Donald was covered by a Group Insurance Policy issued by BEST LIFE and Health Insurance Company to his employer, Ryco Packaging Corporation. Through the Group Insurance Policy, Ryco provided to its employees, as part of an ERISA employee benefit plan, certain life

[1]This form was essentially identical to the one Donald executed on December 7, 1994.

insurance benefits and accidental death and dismemberment insurance benefits. Mid-American Benefits, Inc. acted as third-party administrator and processed participants' enrollment. Donald was a participant in the plan, and Group Insurance Policy provided $20,000 in life insurance benefits and $20,000 in accidental death benefits. Beckers' Ex. 13. The policy had an effective date of September 1, 1996. With regard to changing beneficiaries, the Group Insurance Policy states:

> **Change of Beneficiary**: If the Insured has reserved the right to do so, the Insured may change the Beneficiary by filing a written request on a form satisfactory to Us. In order to be effective, the written request for change of Beneficiary must be signed while the Insured is living and while insurance is in force. The change will be effective on the date the request was signed but will have no effect on any payment made by Us before the request was received.

According to Kristen, sometime after her father's death, she spoke with Jan Link of Ryco's Omaha office, who told her that Bonnie was listed as the beneficiary of Donald's insurance policy, which Link thought was a mistake. In late January 2004, Kristen called Bonnie to discuss the insurance policy. During the phone conversation, Kristen informed Bonnie that Bonnie was listed as the insurance policy's beneficiary; this was news to Bonnie. Kristen and Bonnie disagree as to the remainder of the conversation.

According to Kristen's deposition testimony, Bonnie said that when she had moved in with Donald, they had listed each other on their insurance policies, but when she moved out, she changed hers and told Donald to change his. Bonnie said that was not right (her being the beneficiary of Donald's policy) and asked Kristen if there was something she could sign. Kristen told Bonnie that there was a release form she could sign and that would take care of it. Bonnie said that the money should go to Kristen and Bradley, that they should have it and not her, that she would not think of taking it, and that giving them the money was the right thing to do. Kristen told Bonnie that it really meant a lot to her, and that since Bonnie was going to sign the form, she and Bradley would not take

any legal action and it would eliminate any legal issues between them and Bonnie.[2] Bonnie said to send her the form and she would sign it and send it right back, and that she did not want Kristen to worry about it anymore.

According to Bonnie's deposition testimony, she does not recall the key elements of the conversation. As to the statements outlined above, Bonnie testified that she did not recall or could not remember whether she or Kristen had said those things. Bonnie did not deny that any of the statements were made.[3] Bonnie did testify that she was under the impression from what Kristen said that there had been a mistake on Donald's life insurance policy, that they (Kristen and Bradley) needed help, and that she said she would help them. Murry Depo. 23:20-24:7. In an affidavit in support of her opposition to summary judgment, she states: "I may have suggested that I thought [Kristen] and her brother should receive the money and offered to help." Murry Aff. at 1. Her affidavit also states that during the January 2004 conversation, "I am certain that Kristen Becker never threatened to take legal action, retain an attorney or sue me if I refused to sign over the benefits to her and her brother."[4] Id.

After that conversation, Kristen told several people about her agreement with Bonnie.

---

[2]It is not entirely clear if the promise not to take legal action occurred before or after Bonnie purportedly agreed to sign the form.

[3]Bonnie indicated that she could not recall specifics of the conversation because it occurred 7 or 8 months before her deposition. At one point in the deposition, though, Bonnie said, "I was under the impression that you all had a tape. If you could refresh my memory, maybe that would help since this has been such a length of time." Murry Depo. 17:16-19. Thus, Bonnie's purported inability to recall the conversation's specifics could have been an attempt to avoid giving testimony that would conflict with the tape. In fact, no tape existed.

[4]This statement appears to conflict with Bonnie's deposition testimony that she could not recall Kristen's statement about taking legal action. The court notes that it is impermissible to use an affidavit in an attempt to revise previous deposition testimony so as to avoid summary judgment.

Beckers' Ex. 10. Kristen apparently told BEST LIFE that Bonnie had agreed to assign Donald's insurance benefits over to her and Bradley. A January 30, 2004 letter from BEST LIFE to Bonnie stated that Donald had named her as beneficiary of his insurance benefits, referred to Bonnie and Kristen's conversation that Kristen says resulted in the assignment agreement, and enclosed assignment and release forms for Bonnie to sign and return. Beckers' Ex. 11. Bonnie did not sign and return the forms. Instead, in a February 4, 2004 letter to BEST LIFE, Bonnie stated that she received the January 30 letter, that she did not want to assign her rights as beneficiary of Donald's insurance policy, and that she wanted to make a claim for benefits due under the policy. Beckers' Ex. 12. In a March 3, 2004 letter to BEST LIFE, Kristen stated that she and Bradley were Donald's only heirs, that they contested the payment of insurance benefits to Murry, and that Murry was mistakenly listed as the beneficiary of the insurance policy. Ex. 6 to Complaint. BEST LIFE subsequently filed this interpleader action to resolve the competing claims to Donald's insurance policy proceeds by Bonnie and the Beckers.[5]

## III. Analysis

In their summary judgment motion, the Beckers make two principal arguments as to why they are entitled to Donald's insurance policy proceeds. First, the Beckers argue that Donald substantially complied with the insurance policy's change of beneficiary requirements when he executed the August 12, 1998 designation naming Kristen and Bradley as beneficiaries. Second, the Beckers argue that Bonnie entered into an oral contract with Kristen to assign the insurance proceeds to Kristen and Bradley. These arguments will be addressed in turn.

---

[5]The Beckers filed crossclaims against Bonnie for breach of contract and unjust enrichment. They do not address the unjust enrichment claim in their summary judgment motion.

### A. Substantial Compliance

As noted above, the insurance policy at issue was part of an ERISA employee welfare benefit plan. "ERISA preemption makes the designation of plan beneficiaries and the determination of who is entitled to plan benefits questions of federal law." Equitable Life Assurance Soc'y of the United States v. Crysler, 66 F.3d 944, 948 (8th Cir. 1995). ERISA is silent on the matter of which party shall be deemed beneficiary among disputing claimants. Id. (citations omitted). "[W]here there is no federal statutory law to apply in ERISA litigation, 'federal common law,' not state law, should be applied." Reid v. Connecticut Gen. Life Ins. Co., 17 F.3d 1092, 1098 (8th Cir. 1994).

The Eighth Circuit has not yet dealt with a case involving the federal common law doctrine of substantial compliance and how it applies to competing beneficiary claims to insurance proceeds under an ERISA plan. However, other federal appellate courts have applied the doctrine to resolve such claims.[6] In Phoenix Mutual Life Insurance Company v. Adams, the Fourth Circuit articulated the doctrine as follows: "Pursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." 30 F.3d 554, 564 (4th Cir. 1994). "By definition, substantial compliance is less than actual compliance. The point of the doctrine, whether found in

---

[6]The Eighth Circuit has held that district courts "'may look to state law for guidance in developing federal common law.'" Equitable Life, 66 F.3d at 948-49 (citation omitted). But because federal common law on this issue has already been developed, there is no need to look to state common law. See Randles v. Metropolitan Life Ins. Co., No. C0499LRR, 2005 WL 1277775, at *6 (N.D. Iowa May 25, 2005).

federal or state law, is to give effect to an insured's intent to comply when that intent is evident." Id. at 565.

As a threshold matter, the court notes that there is a genuine dispute of material fact as to whether the insurance policy in question is part of Ryco's 401(k) profit sharing plan: the Beckers assert that it is, and Bonnie asserts that it is not. This dispute is critical because the 1998 beneficiary designation the Beckers rely on expressly refers to the Ryco 401(k) profit sharing plan and mentions nothing about insurance. In typical cases involving substantial compliance, the insured uses the correct change of beneficiary form, but a technical imperfection prevents compliance with the policy's change of beneficiary requirements. See, e.g., Metropolitan Life Ins. Co. v. Johnson, 297 F.3d 558, 560-61 (7th Cir. 2002) (insured checked box for wrong plan on change of beneficiary form); Davis v. Combes, 294 F.3d 931, 942 (7th Cir. 2002) (insured filled out but did not sign and date change of beneficiary form); Harpole v. Entergy Arkansas, Inc., 197 F. Supp. 2d 1152, 1155 (E.D. Ark. 2002) (insured failed to include new beneficiary's social security number on change of beneficiary form). Here, by contrast, it is disputed whether the form that the Beckers rely on is even the correct form for changing the beneficiary of the insurance policy in question.

At issue is a "Beneficiary Designation Election Form" that Donald executed on August 12, 1998 for the "Ryco Packaging Corporation of Kansas 401(k) Profit Sharing Plan," revoking and replacing any prior beneficiary designations and naming Bradley and Kristen as beneficiaries. Beckers' Ex. 7. The designation form states that the beneficiaries will "receive any death benefits payable as a result of my participation in the pension plan named above." On its face, the form unambiguously applies to a specific 401(k) profit sharing plan. There is no mention of insurance of any kind, much less a reference to the insurance policy in question, the policy's insurer BEST

LIFE, or the policy's third-party administrator Mid-American Benefits, Inc.

In arguing that the 1998 designation applies to the insurance policy in question, the Beckers rely heavily on an undated letter from the Ryco 401(k) plan trustee to 401(k) participants. Below the letter's signature block is the following statement: "If you would like information on buying life insurance through your 401(k) Plan, please return the enclosed card."[7] Beckers' Ex. 3. From this statement alone, the Beckers have assumed that the insurance policy in question was a part of the 401(k) plan. But they have not provided any evidence validating this assumption. Just because Donald could have bought life insurance through his 401(k) plan does not mean that he in fact did so. Ryco may well have offered other life insurance having no connection to the 401(k) plan. The insurance policy in question does not mention of the 401(k) plan, nor does BEST LIFE's interpleader complaint. Without more, the court will not assume that the insurance policy was tied to the 401(k) plan.[8]

If the insurance policy was not related to the 401(k) plan, Donald did not substantially comply with the insurance policy's change of beneficiary provisions by completing the 1998 designation. First, that designation's plain language demonstrates that it applied to the Ryco 401(k) profit sharing plan, so it did not evidence Donald's intent to make a change to his insurance policy beneficiary. Second, Donald's execution of the 1998 designation was not "for all practical purposes similar to the action required by the change of beneficiary provisions" of the insurance policy. The

[7]The court notes that the body of the letter has nothing to do with insurance and instead discusses "an optional professional investment service" available for a small fee.

[8]Bonnie or the Beckers could have obtained an affidavit from appropriate BEST LIFE and/or Ryco representatives, stating whether the insurance policy was part of the 401(k) plan and identifying the correct form needed to change the insurance policy beneficiary. Without this information, the court cannot determine the significance or effect of the 1998 designation.

insurance policy states: "If the Insured has reserved the right to do so, the Insured may change the Beneficiary by filing a written request on a form satisfactory to Us. In order to be effective, the written request for change of Beneficiary must be signed while the Insured is living and while insurance is in force." Beckers' Ex. 13. A beneficiary designation for a 401(k) plan simply cannot be effective as to an unrelated insurance policy. See Steamship Trade Ass'n Int'l Longshoremen's Ass'n Benefits Trust Fund v. Bowman, 247 F.3d 181, 184-85 n.* (4th Cir. 2001) (applying Phoenix test for substantial compliance and finding that insured did not substantially comply with requirements for changing life insurance beneficiary when he completed form designating beneficiary for unrelated benefit plan).

The Beckers contend that Donald's intent to designate them as beneficiaries of the insurance policy can be inferred because the 1998 designation only makes sense if Donald thought that the 401(k) plan included the insurance policy, which went into effect in 1996. They note that the 1994 designation named them as beneficiaries of the Ryco 401(k) profit sharing plan and that the 1998 designation is essentially identical. The 1996 "Enrollment Card" from Mid-American, Benefits, Inc. designated Bonnie as beneficiary of an unspecified group plan.[9] The Beckers argue that Donald must have thought the 1996 designation made Bonnie the beneficiary of an insurance policy that was part of the 401(k) plan; otherwise, he would have had no reason to re-designate the Beckers as beneficiaries of the 401(k) plan in 1998 because he had already done so in 1994. Because the Beckers have not proven that the insurance policy had anything to do with the 401(k) plan, their

[9]Apparently the 1996 "Enrollment Card" is the designation that BEST LIFE relied on in concluding that Bonnie was the named beneficiary of the insurance policy at issue. Bonnie argues that if Donald had wanted to change the beneficiary to the Beckers, the correct form to use would have been another "Enrollment Card" form. But she offers no support for that conclusion.

theory about Donald's thought process as to the 1998 designation does not evidence that he intended to make a change to his insurance policy beneficiary.[10]

In conclusion, because the August 18, 1998 designation does not appear to relate to insurance and because the Beckers have not proven that the insurance policy in question was part of the 401(k) plan, the court cannot conclude that Donald substantially complied with the insurance policy's change of beneficiary requirements when he executed the 1998 designation.[11]

**B. Oral contract assigning insurance proceeds**

The Beckers also contend that they are entitled to the insurance policy proceeds based on an oral contract between Bonnie and Kristen, in which Bonnie agreed to assign the insurance proceeds to Kristen and Bradley. According to the Beckers, the oral contract was created during a January 2004 phone call. Under Missouri law, the essential elements of a contract are (1) competency of the

---

[10]In support of their claim to the insurance proceeds, the Beckers also note that Bonnie moved out of Donald's house in late 1996 or early 1997, that Donald's 2001 will named Kristen and Bradley as his two sole heirs, and that Donald told Kristen over the phone that he was leaving everything to her and Bradley. These events do not establish necessarily that Donald intended to change his insurance policy beneficiary to the Beckers. They literally refer to current assets. The purpose of the substantial compliance doctrine is "to carry out the insured's intent when it is evident." Phoenix, 30 F.3d at 565. Here, Donald's intent is somewhat unclear.

[11]The court notes that Missouri common law doctrine of substantial compliance is similar to, but somewhat more rigid than, the federal common law doctrine. "Missouri recognizes the equitable doctrine of substantial compliance to carry out the intent of an insured where the insured has not strictly complied with the method provided by an insurance policy to change the beneficiary. The equitable doctrine of substantial compliance makes an incomplete or irregular change of beneficiary effective against the original beneficiary where the insured has done all within his power to exercise his right to change the beneficiary." Anglen v. Heimburger, 803 S.W.2d 109, *112 (Mo. Ct. App. 1990) (citing Capitol Life Ins. Co. v. Porter, 719 S.W.2d 908, 910 (Mo. Ct. App. 1986)). "The doctrine carries out the intent of the insured and the insured must have done everything possible under the circumstances to effectuate his intent." Id. Thus, even if the court had relied on the Missouri substantial compliance rule instead of the federal one, the conclusion would have been the same, based on the current record. This conclusion does not, of course, preclude a renewed motion, based on additional material.

parties to contract, (2) subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. Building Erection Servs. Co. v. Plastic Sales & Mfg. Co., Inc., 163 S.W.3d 472, 477 (Mo. Ct. App. 2005). A contract is not valid and enforceable unless all five elements are satisfied.

The parties do not dispute the satisfaction of the first two elements. However, they disagree sharply on the remaining three elements. The court will first focus on the mutuality of agreement element, as it appears to be dispositive. "The term 'mutuality of agreement' implies a mutuality of assent or a meeting of the minds to the essential terms of a contract." Ketcherside v. McLane, 118 S.W.3d 631, 635 (Mo. Ct. App. 2003). One essential contract term is Bonnie's alleged agreement to sign the form assigning the insurance proceeds to the Beckers. Based on the evidence of record, the Beckers have not demonstrated that there was a meeting of the minds between Kristen and Bonnie as to that critical contract term. According to Kristen, when she told Bonnie that she was listed as the beneficiary of Donald's life insurance policy, Bonnie asked if there was a form she could sign. Further, when she told Bonnie there was a release form she could sign, Bonnie said that the money should go to Kristen and Bradley and ultimately said to send her the form and she would sign and return it. By contrast, Bonnie testified that she did not recall asking if there was a form she could sign, or asking Kristen to send her the form and agreeing to sign and return it. Bonnie did testify that she was under the impression there was a problem with Donald's life insurance policy, that the Beckers needed help, and that she said she would help them. However, agreeing to "help" and actually agreeing to sign a form assigning the insurance proceeds to the Beckers, are two different things. At bottom, Bonnie disputes that she ever offered or agreed to sign a form assigning

Donald's insurance proceeds to the Beckers.[12] As a result of this factual dispute, the mutuality of agreement element has not been satisfied, absent further fact-finding.

Without proof of the mutuality of agreement element, the Beckers have not demonstrated the existence of an oral contract. Thus, the court need not analyze the two remaining elements. Because at least one of the five essential elements of a contract has not been satisfied, the court cannot conclude that Kristen and Bonnie entered into an oral contract under which Bonnie agreed to assign the insurance policy proceeds to Kristen and Bradley.[13]

Viewing the evidence in the light most favorable to Bonnie, the Beckers have not demonstrated that they are entitled to the insurance proceeds. Genuine issues of material fact exist as to both of the Beckers' theories of recovery. Therefore, their summary judgment motion must be denied.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendants Kristen and Bradley Becker's motion for summary judgment (ECF doc. 42) is DENIED, without prejudice to renewal with supplemental material.

---

[12]The Beckers argue that Bonnie's testimony that she does not recall or remember agreeing to sign the form, is not enough to controvert Kristen's testimony that Bonnie did agree to sign the form. Thus, they argue, Bonnie's inability to recall or remember does not create a genuine issue of fact precluding summary judgment. The court disagrees. A deponent's failure to specifically deny something does not automatically constitute an admission of the same. In trying to determine whether two individuals entered into an oral contract, the court must look to the testimony of the individuals. If there is a conflict, it should be resolved by a credibility assessment at trial, not on summary judgment. Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003) ("In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations.").

[13]As a result, the court does not reach the Beckers' breach of contract crossclaim.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 6, 2005

Kansas City, Missouri